IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**ROBERT STEWART**                                                                               **PLAINTIFF**

**v.**                                                                            **No. 4:06CV1-P-B**

**LAWRENCE KELLY, ET AL.**                                        **DEFENDANTS**

**MEMORANDUM OPINION**

This matter comes before the court on the *pro se* prisoner complaint of Robert Stewart (#31797), who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. The plaintiff alleges that the defendants have denied him adequate medical treatment in violation of the Eighth Amendment prohibition against cruel and unusual punishment. He also alleges that the defendants retaliated against him when he filed a grievance seeking improved medical care. For the reasons set forth below, the instant case shall be dismissed for failure to state a claim upon which relief could be granted.

**Factual Allegations**

The plaintiff's allegations are contained in a complaint approximately 100 pages long. The allegations are not, however, presented in chronological order in that complaint. The court has thus organized the factual allegations using the following time line:

| | |
|---|---|
| 1985 - | The plaintiff tested positive for exposure to tuberculosis while incarcerated with the Mississippi Department of Corrections |
| December 2004 - | The plaintiff requested treatment latent tuberculosis. He was examined; x-rays were taken, and his blood was tested. |

| | |
|---|---|
| January 25, 2005 - | The plaintiff was given Isoniazid ("INH") to treat tuberculosis. The plaintiff became sick after two weeks with influenza-like symptoms. He recovered after another week, but the symptoms returned, accompanied by abdominal pain and numbness in his extremities. Side-effects of INH and other drugs used to treat tuberculosis include abdominal pain, numbness in extremities, and liver damage. |
| April 2005 - | The plaintiff's liver enzyme count increased. He was then taken off the INH regimen. Blood tests revealed that the plaintiff's platelet count had dropped to 62,000. This development precluded treating the plaintiff with INH or another common drug used to treat tuberculosis, Rifampin. |
| May 2005 - | Dr. Lehman informed the plaintiff that the plaintiff's low platelet count could be a sign of liver damage. Dr. Lehman then performed tests to detect hepatitis A, hepatitis B, and hepatitis C. |
| June 2005 - | The plaintiff's May 2005 hepatitis test results, however, were placed in the incorrect medical file, requiring the tests to be conducted again. |
| July 2005 - | The plaintiff's test results showed that he had contracted hepatitis C. The plaintiff was not informed of this test result at the time, and he was not treated for the condition. |
| July 24, 2005 - | The plaintiff sent a letter to the medical department inquiring about the results of his hepatitis tests. |
| August 14, 2005 - | The plaintiff sent a second letter to the medical department inquiring about the results of his hepatitis tests. |
| August 16, 2005 - | The plaintiff submitted a sick call request seeking treatment for numerous boils under his right arm and for blood in his urine. |
| August 17, 2005 - | Dr. Santos examined the plaintiff and diagnosed the thirteen boils in the plaintiff's armpit as a staph infection. Dr. Santos prescribed a ten-day regimen of antibiotic – and told the plaintiff, "At your age [over fifty], urinating blood is normal." |
| August 25, 2005 - | The plaintiff received follow-up treatment for the staph infection; the doctor gave the plaintiff two shots, continued the regimen of antibiotics, and ordered the plaintiff a lay-in. |

August 28, 2005 -   The plaintiff filed a grievance regarding his lack of treatment for tuberculosis. He also wrote Dr. Bearry requesting that the medical alert be removed from the plaintiff's inmate file so the plaintiff can be transferred to a private prison.

September 22, 2005 - The plaintiff was examined by a nurse for his "over-fifty" physical. At the conclusion of his examination, the nurse told the plaintiff that he would be transferred to a different housing unit, removed from his welding job with Mississippi Prison Industries, and placed instead with the workers in field operations. The plaintiff believes that these actions were taken in retaliation for grievance he filed against the medical staff in August.

September 23, 2005 - Dr. Santos examined the plaintiff for his "over-fifty" physical. Dr. Santos asked the plaintiff, "What type of medicine are you taking for hepatitis C?" This was the plaintiff's first notice that he had been diagnosed with hepatitis C. As a result of this diagnosis, the plaintiff was changed from Medical Class I to Medical Class III. This change of medical class, in turn, excludes the plaintiff from working at a prison industries job – and from vocational training. Dr. Santos did not prescribe any course of treatment for the plaintiff's hepatitis C.

The plaintiff filed an emergency grievance form with the Administrative Remedy Program that same day.

September 29, 2005 - The plaintiff wrote a letter to Dr. Bearry seeking treatment for his hepatitis C and latent tuberculosis.

October 2, 2005 -   The plaintiff wrote a letter to Pamela Robinson in Offender Services regarding the loss of his prison job and his move to field operations.

October 3, 2005 -   Nurse Johnson spoke with the plaintiff regarding hepatitis C and obtained the plaintiff's permission to administer hepatitis A and B vaccinations.

October 5, 2005 -   The plaintiff wrote a letter to Dr. Bearry requesting treatment for his tuberculosis and hepatitis C.

October 10, 2005 -  The plaintiff wrote another letter to Dr. Bearry requesting treatment for his tuberculosis and hepatitis C.

October 14, 2005 -  The plaintiff received his first round of hepatitis A and B vaccinations. The second vaccination was scheduled one month later on November 14, 2005. The final round was set for April 14, 2006.

The plaintiff noticed a large amount of blood in his urine, including what appeared to be small clots. When the guard on duty called the prison

          hospital, the hospital staff person said, "Have the inmate file a sick call request form." The plaintiff did so, knowing that because it was Friday, he would not be seen until Monday at the earliest.

October 17, 2005 - On Monday, Dr. Kim tested the plaintiff for prostate cancer, took a sample of the plaintiff's bloody urine, and referred the plaintiff to the hospital at Unit 42 for a kidney x-ray. Dr. Kim also prescribed a strong antibiotic.

          That same day, the plaintiff received a response from his August 28, 2005, grievance form. The response stated, "No need to be sent to specialist for extensive blood work at this time."

October 18,2 005 - Dr. Lehman at the Unit 42 Hospital ordered the same tests as Dr. Kim. The x-rays and tests were performed, but no one told the plaintiff the results. The plaintiff never received the antibiotic prescribed; instead, he bought 60 antibiotic pills from another inmate. After three days of treatment with the contraband antibiotic, the plaintiff's urine cleared up. The plaintiff still feels a burning sensation when he urinates, and his kidneys hurt.

### Denial of Medical Care

In order to prevail on an Eighth Amendment claim for denial of medical care, a plaintiff must allege facts which demonstrate "deliberate indifference to the serious medical needs of prisoners [which] constitutes 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment . . . whether the indifference is manifested by prison doctors or prison guards in intentionally denying or delaying access to medical care . . . ." *Estelle v. Gamble*, 429 U.S. 97, 104-105, 50 L. Ed. 2d 251, 260 (1976); *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992). The test for establishing deliberate indifference is one of "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Under this standard, a state actor may not be held liable under 42 U.S.C. § 1983 unless plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 838. Only in

exceptional circumstances may knowledge of substantial risk of serious harm be inferred by a court from the obviousness of the substantial risk. *Id*. Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662 (1986), *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668 (1986). A prisoner's mere disagreement with medical treatment provided by prison officials does not state a claim against the prison for violation of the Eighth Amendment by deliberate indifference to his serious medical needs. *Gibbs v. Grimmette*, 254 F.3d 545 (5th Cir.2001), *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).

The plaintiff's allegations of denial of medical care fail to state a claim upon which relief could be granted. He complains of inadequate medical care for two conditions: tuberculosis (bacterial infection of the lungs) and hepatitis C (viral infection of the liver). The defendants have attempted to treat the plaintiff for tuberculosis, but the side effects of such treatment can damage the plaintiff's liver – which is likely under stress already from the hepatitis C infection. Indeed, when the plaintiff manifested symptoms of these side effects after undergoing drug treatment for tuberculosis, the defendants terminated use of the tuberculosis medications. In addition, the various drug therapies for hepatitis C can have serious side effects, and the defendants have monitored the plaintiff's condition and decided that it does not yet warrant such aggressive drug therapy. The plaintiff disagrees with this approach, but, as discussed above, such disagreement does not rise to the level of a constitutional claim. As such, the plaintiff's claim of denial of medical care shall be dismissed. The plaintiff filed a January 3, 2006, motion for preliminary injunction seeking an order requiring the physicians caring for the plaintiff to provide specific treatment for his tuberculosis and hepatitis C. The court shall deny that motion in light of the discussion above.

### Retaliation

The plaintiff claims that he filed a grievance regarding his medical care for tuberculosis and that the defendants retaliated against him for doing so by placing him in Medical Class III, moving him to another housing unit, and removing him from his prison job as a welder. Each of the defendants' actions, however, appears to be a rational response to the plaintiff's positive tests for tuberculosis and hepatitis C. The court shall require further briefing on this issue once the defendants have made an appearance in this case.

In sum, the plaintiff's claim regarding denial of medical care shall be dismissed with prejudice for failure to state a claim upon which relief could be granted, as will his January 3, 2006, motion for a temporary restraining order or preliminary injunction. The plaintiff's claim of retaliation, however, shall be allowed to proceed, and the court shall order further briefing on that issue when the defendants make an appearance in this case. A judgment consistent with this memorandum opinion shall issue today.

**SO ORDERED,** this the 19th day of April, 2006.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE