# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# GREENVILLE DIVISION

ROBERT STEWART                                                                           PLAINTIFF

v.                                                                              No. 4:06CV1-P-B

LAWRENCE KELLY, ET AL.                                                                  DEFENDANTS

## MEMORANDUM OPINION

This matter comes before the court on the defendants' June 30, 2006, motion for summary judgment in this *pro se* prisoner case challenging the conditions of the plaintiff's confinement under 42 U.S.C. § 1983. The plaintiff responded to the motion July 17, 2006, and the defendants have replied. The matter is ripe for resolution. For the reasons set forth below, the defendants' motion shall be granted and the instant case dismissed.

**Summary Judgment Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)). After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d

202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998). Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992). The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

**Undisputed Material Facts**

The court mapped out a time line outlining the plaintiff's medical treatment, grievances filed, results of the grievances, and the plaintiff's change to Medical Class III. That chronology is set forth below – with minor changes based upon more recently filed pleadings and evidence.

| | |
|---|---|
| 1985 - | The plaintiff tested positive for exposure to tuberculosis while incarcerated with the Mississippi Department of Corrections |
| December 2004 - | The plaintiff requested treatment for latent tuberculosis. He was examined; x-rays were taken, and his blood was tested. |
| January 25, 2005 - | The plaintiff was given Isoniazid ("INH") to treat tuberculosis. The plaintiff became sick after two weeks with influenza-like symptoms. He recovered after another week, but the symptoms returned, accompanied by abdominal pain and numbness in his extremities. Side-effects of INH and other drugs used to treat tuberculosis include abdominal pain, numbness in extremities, and liver damage. |
| April 2005 - | The plaintiff's liver enzyme count increased. He was then taken off the INH regimen. Blood tests revealed that the plaintiff's platelet count had dropped to 62,000. This development precluded treating the plaintiff with INH or another common drug used to treat tuberculosis, Rifampin. |
| May 2005 - | Dr. Lehman informed the plaintiff that his low platelet count could be a sign of liver damage. Dr. Lehman then performed tests to detect hepatitis A, hepatitis B, and hepatitis C. |
| June 2005 - | The plaintiff's May 2005 hepatitis test results, however, were placed in the incorrect medical file, requiring the tests to be conducted again. |
| July 2005 - | The plaintiff's test results showed that he had contracted hepatitis C. The plaintiff was not informed of this test result at the time, and he was not treated for the condition. |
| July 24, 2005 - | The plaintiff sent a letter to the medical department inquiring about the results of his hepatitis tests. |
| August 14, 2005 - | The plaintiff sent a second letter to the medical department inquiring about the results of his hepatitis tests. |
| August 16, 2005 - | The plaintiff submitted a sick call request seeking treatment for numerous boils under his right arm and for blood in his urine. |
| August 17, 2005 - | Dr. Santos examined the plaintiff and diagnosed the thirteen boils in the plaintiff's armpit as a staph infection. Dr. Santos prescribed a ten-day regimen of antibiotic. |
| August 25, 2005 - | The plaintiff received follow-up treatment for the staph infection; the |

|                      | doctor gave the plaintiff two shots, continued the regimen of antibiotics, and ordered the plaintiff a lay-in. |
|---|---|
| August 28, 2005 - | The plaintiff filed a grievance regarding his lack of treatment for tuberculosis. He also wrote Dr. Bearry requesting that the medical alert be removed from the plaintiff's inmate file so the plaintiff can be transferred to a private prison. |
| September 22, 2005 - | The plaintiff was examined by a nurse for his "over-fifty" physical. At the conclusion of his examination, the nurse told the plaintiff that he would be transferred to a different housing unit, removed from his welding job with Mississippi Prison Industries, and placed instead with the workers in field operations. The plaintiff believes that the nurse told him these things in retaliation for grievance he filed against the medical staff in August. |
| September 23, 2005 - | Dr. Santos examined the plaintiff for his "over-fifty" physical. Dr. Santos asked the plaintiff, "What type of medicine are you taking for hepatitis C?" This was the plaintiff's first notice that he had been diagnosed with hepatitis C. As a result of this diagnosis, the plaintiff was changed from Medical Class I to Medical Class III. This change of medical class, is one of the factors used to determine whether the plaintiff may work at a prison job. Dr. Santos did not prescribe any course of treatment for the plaintiff's hepatitis C.<br><br>The plaintiff filed an emergency grievance form with the Administrative Remedy Program that same day. |
| September 29, 2005 - | The plaintiff wrote a letter to Dr. Bearry seeking treatment for his hepatitis C and latent tuberculosis. |
| October 2, 2005 - | The plaintiff wrote a letter to Pamela Robinson in Offender Services regarding the loss of his prison job and his move to field operations. |
| October 3, 2005 - | Nurse Johnson spoke with the plaintiff regarding hepatitis C and obtained the plaintiff's permission to administer hepatitis A and B vaccinations. |
| October 5, 2005 - | The plaintiff wrote a letter to Dr. Bearry requesting treatment for his tuberculosis and hepatitis C. |
| October 10, 2005 - | The plaintiff wrote another letter to Dr. Bearry requesting treatment for his tuberculosis and hepatitis C. |
| October 14, 2005 - | The plaintiff received his first round of hepatitis A and B vaccinations. |

>               The second vaccination was scheduled one month later on November 14,
>               2005.  The final round was set for April 14, 2006.
>
>               The plaintiff noticed a large amount of blood in his urine, including what
>               appeared to be small clots.  When the guard on duty called the prison
>               hospital, the hospital staff person said, "Have the inmate file a sick call
>               request form."  The plaintiff did so, knowing that because it was Friday, he
>               would not be seen until Monday at the earliest.

October 17, 2005 -   On Monday, Dr. Kim tested the plaintiff for prostate cancer, took a sample
of the plaintiff's bloody urine, and referred the plaintiff to the hospital at
Unit 42 for a kidney x-ray.  Dr. Kim also prescribed a strong antibiotic.

>               That same day, the plaintiff received a response from his August 28, 2005,
>               grievance form.  The response stated, "No need to be sent to specialist for
>               extensive blood work at this time."

October 18, 2005 -   Dr. Lehman at the Unit 42 Hospital ordered the same tests as Dr. Kim.
The x-rays and tests were performed, but no one told the plaintiff the
results.  The plaintiff never received the antibiotic prescribed; instead, he
bought 60 antibiotic pills from another inmate.  After three days of
treatment with the contraband antibiotic, the plaintiff's urine cleared up.
The plaintiff still feels a burning sensation when he urinates, and his
kidneys hurt.

Dr. John Bearry, Medical Director at the Mississippi State Penitentiary, set forth three unrebutted facts critical to the outcome of this case.  First – and most importantly – medical personnel do not have the power to assign inmates to prison jobs within the Mississippi Department of Corrections.  Second, assignment to Class III does not automatically preclude an inmate from working in a Prison Industries job.  Finally, the plaintiff has tested positive both for tuberculosis and hepatitis C – two serious medical conditions.

With these facts in mind, the court finds that the medical defendants in this case are not responsible for the ultimate decision to remove the plaintiff from his prison job. Medical personnel can – after proper examination and diagnosis – reduce and inmate's medical

classification, but even that would not necessitate his removal from a prison job. A downgrade from Medical Class I to Medical Class III would thus make it only *more likely* that the plaintiff would be assigned a less favorable prison job. In reality, such a reclassification would be uncertain. The mere increase in probability of removal from a prison job is insufficient to state a claim of retaliation; the connection is too attenuated. In addition, the placement of the plaintiff into Medical Class III was entirely reasonable given the serious nature of his afflictions – tuberculosis and hepatitis C – and their effects on him as found in his medical record. The plaintiff's platelet count was low, and the level of liver enzymes in his blood had risen. The plaintiff himself acknowledged his low platelet count at a May 1, 2006, doctor visit, stating, "I am not letting these doctor[s] cut on me [un]til[] my platelet count is correct[.] I am not releasing anybody []from respon[sibility]." The plaintiff has repeatedly requested medical examination and treatment. He has repeatedly received both, but now disagrees with the results (placement on Medical Class III) and seeks – through the instant suit – to choose his own medical classification – and his housing assignment.

Patients do not get to pick their own medical diagnoses, treatments, and classifications – not even in the free world. Likewise, prisoners in the Mississippi Department of Corrections do not get to choose the facility in which they are housed. In this case, the plaintiff has attempted to do both. In his August 28, 2005, grievance the plaintiff primarily sought to have the "medical alert . . . dropped from [his] file so [he] can be moved to a private or regional facility so [he] can be where [he] can get a visit from family [who are] unable to travel to Parchman." Given the plaintiff's serious medical conditions, this expectation was unreasonable, and the plaintiff obviously realized this. After his numerous medical examinations in early- to mid-2005, the

plaintiff saw the writing on the wall. Correctly suspecting that diagnosis with tuberculosis and hepatitis C would lead to a reduced medical classification, the plaintiff attempted to *create* a retaliation claim by filing the August 28, 2005, grievance. The grievance stated, in essence, "Now that you doctors have examined me, if you find that my medical class should be reduced, that finding is in retaliation for this grievance." The plaintiff's words were, "Relief sought . . . [t]hat no retaliation be shown towards me for filing this A.R.P. such as medical class being changed, job loss, transferred to Rankin Co., Unit 72D or harassment of any kind . . . ." Unfortunately for the plaintiff, mere anticipation of bad medical news does not a retaliation claim make. While the court recognizes that – for the purposes of a *motion to dismiss* – retaliation can be inferred from the chronology of events,[1] the timing in this case does not lead to an inference of retaliation. In addition, the plaintiff faces not a motion to dismiss, but a *motion for summary judgment*, the very purpose of which is to "pierce the allegations in the pleadings" and mount a challenge to the factual existence of a valid claim. *Tuley v. Heyd*, 482 F.2d 590 (5th Cir. 1973), *citing* 10 C. Wright & A. Miller, Federal Practice and Procedure § 2712 at 373 (1973). The plaintiff has alleged no facts – and adduced no proof – to support his claim of retaliation. The medical personnel have produced affidavit and documentary evidence to show that they acted reasonably in changing the plaintiff's medical class – and have no direct control over the plaintiff's medical class or housing assignments. The medical defendants shall thus be dismissed. In addition, the plaintiff has not alleged that the sole remaining defendant, Superintendent Lawrence Kelly, had any personal involvement in this case; as such, the plaintiff's claims against defendant Kelly shall be dismissed. *Woods v. Edwards*, 51 F.3d 577,

---

[1] *See, e.g., Woods v. Smith*, 60 F.3d 1161 (5th Cir. 1996).

583 (5th Cir. 1995) (citing *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983)).

In sum, the defendants' motion for summary judgment shall be granted and judgment entered for the defendants. A final judgment consistent with this memorandum opinion shall issue today.

**SO ORDERED,** this the 20th day of December, 2006.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE